**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | )   Case No.  4:19-cr-00613 SRC |
| | ) |
| HARRY JOHN HAMM, | ) |
| | ) |
| Defendant(s). | ) |

**<u>Memorandum and Order</u>**

Defendant Harry John Hamm pleaded guilty to two counts of possession of child pornography and one count of accessing with intent to view child pornography, and is now set for sentencing.  According to his counsel, Hamm is a "community figure," which "heightens the level of scrutiny regarding his history[.]"  Doc. 59 at p. 1.  As such, Hamm filed a motion to seal his sentencing memorandum in its entirety.  *Id*.  The United States then filed a response, Doc. 63, under seal, without any motion to seal.  The public has both constitutional and common-law rights of access to various criminal proceedings and documents.  The Court must determine whether Hamm has met his burden to overcome those rights.  Public-access rights promote public confidence in the criminal-justice system and accurate factfinding, inform the discussion of governmental affairs, allow for the review of court decisions in the forum of public opinion, and as has been said, provide therapeutic value to the community.  The Court also addresses the United States' sealed response.

1

Hamm is set for sentencing immediately following his plea hearing.[1]  Because the Court finds that Hamm has failed to meet his burden to seal his sentencing memorandum, the Court denies Hamm's motion to seal, Doc. 59, without prejudice.  The Court will allow Hamm—at his option—to file a motion to continue the sentencing hearing so that the parties may brief more fully, and the Court may further consider the sealing issue, or proceed with sentencing as scheduled.  If Hamm opts for the latter, the Court will consider only those materials in the sentencing memorandum that Hamm and his counsel choose to put on the public record at the sentencing hearing, and other materials as is appropriate under the law.

## I.      Discussion

### A.      Hamm's motion

As authority for sealing, Hamm's motion cites only this Court's Local Rule 13.05 on sealing documents.  Doc. 59 at p. 1.  Hamm cites no constitutional provisions, statutes, or cases to support his motion.  *Id*.  He also mentions that the Court's proposed revisions to Local Rule 13.05 are not yet in effect.  The Court includes the entire body of Hamm's motion here:

> Counsel requests leave to file her Sentencing Memorandum under seal. Sealing of the document complies with local rule 13.05 and the principles for sealing documents as suggested by the Judicial Conference of the United States. The sentencing memorandum contains information regarding defendant's physical and mental health history. The document also contains information regarding defendant's parents and descriptions of defendant's childhood victimization. The document describes defendant's military training, work history, counseling history and other identifying factors which are not suitable for public review. The nature and description of these items are so intertwined with the body of the memorandum as to make redaction of this information impractical.
>
> The revision of Local Court Rule 13.05 outlining greater restrictions for sealing documents does not go into effect until March 1, 2021. None the less, even if the revised rule were to be in effect today the request for leave to file a sealed sentencing memorandum complies with the letter and the spirit of the rule and

---

[1] The circumstances of the present motion highlight the Court's concerns with the combined plea-and-sentencing procedure and underscore why the Court makes them the exception, not the rule.  *See* Judge Stephen R. Clark's Fourth Standing Order (effective Jan. 22, 2021).

meets the seven principles for sealing documents as suggested by the Judicial Conference of the United States. The rule is designed to allow the Court discretion as to which documents should be filed under seal and to ensure that information is not sealed needlessly. Documents which contain confidential information regarding medical issues, mental health or substance use treatment and specifics regarding crime victimization are all appropriate topics to be filed under seal. When the information which is appropriate to be sealed is so embedded into the context of the document redaction becomes impossible. Mr. Hamm's status as a community figure heightens the level of scrutiny regarding his history and provides greater incentive or this Court to grant defendant's request for confidential information to remain sealed. This motion for request to file sealed document is available to the public and provides adequate notice of the contents of the sealed motion and the purpose of sealing the document.

*Id*.

Hamm's argument turns on a few things:  Hamm argues for a lower sentence based on his history and characteristics, which he asserts are "not suitable for public review," and that he is a community figure, which "heightens the level of scrutiny regarding his history[.]"  Doc. 59 at p. 1.  It is unclear to the Court *whose* scrutiny Hamm argues is heightened by his community status, the Court's or the public's, but the Court assumes the latter.  In any event, Hamm does not cite any authority for the proposition that one's status as a community figure demands or suggests a greater need for sealing all or any part of his basis for seeking a lower sentence.  And, as discussed below, the opposite may be true.   Hamm further argues that his reasons are so "embedded into the context of the document redaction becomes impossible."  *Id.*

### B.    Governing law

A sentencing judge "should begin all sentencing proceedings by correctly calculating the applicable . . . range" under the United States Sentencing Guidelines.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Then, the judge considers all of the factors that Congress set forth in 18 U.S.C. § 3553(a), which provides:

3

The court, in determining the particular sentence to be imposed, ***shall consider***—
>    **(1)** the nature and circumstances of the offense ***and the history and characteristics of the defendant***;
>    **(2)** the need for the sentence imposed—
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> **(B)** to afford adequate deterrence to criminal conduct;
>> **(C)** to protect the public from further crimes of the defendant; and
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>    **(3)** the kinds of sentences available;
>    **(4)** the kinds of sentence and the sentencing range established for—
>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>> **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>> **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced;
>>> . . .
>    **(5)** any pertinent policy statement—
>> **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>> **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>    **(6)** *the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct*; and
>    **(7)** the need to provide restitution to any victims of the offense.

(emphasis added).

Particularly relevant here, the Court must consider both Hamm's personal history and characteristics, and the need to avoid unwarranted sentence disparities among similarly-situated defendants. *Id.* In avoiding unwarranted disparities, a sentencing judge focuses on sentences imposed by all federal judges in all districts in the United States. *Gall*, 552 U.S. at 49 (the

Guidelines provide the "starting point and the initial benchmark" for securing "nationwide consistency" in sentencing); *see also Mistretta v. United States*, 488 U.S. 361, 366 (1989) (noting, as a key motivator for the Sentencing Reform Act, Congressional concern about the "great variation among sentences imposed by different judges upon similarly situated offenders"); and U.S. Sentencing Comm'n, *Inter-District Differences in Federal Sentencing Practices: Sentencing Practices Across Districts from 2005-2007*, at 6 (2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200122_Inter-District-Report.pdf ("[T]he Commission's ongoing analysis in this area [of inter-district sentencing] directly relates to a key goal of the Sentencing Reform Act of 1984: reducing unwarranted sentencing disparities that existed in the federal judicial system . . . [including] a widespread bipartisan concern that such disparities existed both regionally (e.g. differences among the districts) and within the same courthouse.").

Sealing sentencing memoranda in whole or in part as a matter of course would create a veil of opacity that puts the Court's mandatory statutory duties of considering a defendant's history and characteristics and the sentences imposed on the nationwide universe of similarly-situated defendants in tension with one another.  Keeping a defendant's history and characteristics under seal hinders comparison of whether defendants are similarly situated and frustrates a "key goal" of the Sentencing Reform Act of 1984.  *See* U.S. Sentencing Comm'n*, Inter-District Differences in Federal Sentencing Practices: Sentencing Practices Across Districts from 2005-2007*, at 6.  Against this backdrop, the Court reviews the law on public access to sentencing memoranda and related materials.[2]

---

[2] The Court notes that different considerations apply to defendants providing substantial assistance, and because Hamm's motion does not raise substantial-assistance issues, the Court does not address those considerations here.

1.        **Right of access in the Eighth Circuit**

A district court "has supervisory control over its records, however, and we review the

district court's ultimate decision to seal or unseal for an abuse of discretion."  *Flynt v. Lombardi*,

885 F.3d 508, 511 (8th Cir. 2018) (citing *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co*., 898

F.2d 1371, 1376 (8th Cir. 1990)); *see also Duckworth v. St. Louis Metro. Police Dep't*, 654 F.

App'x 249, 250 (8th Cir. 2016) (unpublished per curiam) ("Whether or not to seal a court file is a

decision 'best left to the sound discretion of the trial court.'" (quoting *United States v. Webbe*,

791 F.2d 103, 106 (8th Cir. 1986))).  The Eighth Circuit recognizes that the right of access to

judicial records arises under the common law, the First Amendment, and the Sixth Amendment.

*Flynt* explained that "[g]enerally speaking, there is a common-law right of access to

judicial records, but that right is not absolute."  *Flynt*, 885 F.3d at 511 (citing *Nixon v. Warner

Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978); *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir.

2013)).  "The primary rationales for this right are the public's confidence in, and the

accountability of, the judiciary."  *Id*. (citing *IDT*, 709 F.3d at 1222).  Whether the common-law

presumption can be overcome is determined by balancing "the interests served by the common-

law right of access . . . against the salutary interests served by maintaining confidentiality of the

information sought to be sealed."  *Id*. (quoting *IDT*, 709 F.3d at 1222).

To determine whether the common law presumption has been overcome, courts must

decide: 1) if the documents in question are judicial records; and if so, 2) whether the party

seeking to prevent disclosure has overcome the common-law right of access that would

otherwise apply to such records.  *Id*. (citing *IDT*, 709 F.3d at 1222-23).  "[T]he weight to be

given the presumption of access must be governed by the role of the material at issue in the

exercise of Article III judicial power and [the] resultant value of such information to those

monitoring the federal courts." *IDT*, 709 F.3d at 1224 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995))  "The presumption of public access to judicial records may be overcome if the party seeking to keep the records under seal provides a compelling reason for doing so." *Id*. (citing *In re Neal*, 461 F.3d 1048, 1045 (8th Cir. 2006)).

In accordance with Supreme Court precedent, the Eighth Circuit also recognizes a First Amendment right of access.  As stated in *Zink v. Lombardi*, 783 F.3d 1089, 1112 (8th Cir. 2015), "[t]he Supreme Court held in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–13 . . . (1986), that the public enjoys a qualified right of access to certain judicial proceedings."  The right has been recognized in preliminary hearings, criminal trials, and voir dire.  *Zink*, 783 F.3d at 1112 (citing *Press-Enterprise*, 478 U.S. at 10; *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579-80 (1980); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 505–11 (1984)). Additionally, the Eighth Circuit "has held that the First Amendment right of access applies to some records filed in criminal proceedings—specifically documents filed in support of search warrant applications . . .."  *Id*. (citing *In re Search Warrant for Secretarial Area Outside Office of Gunn,* 855 F.2d 569, 572–73 (8th Cir.1988)).

"To determine whether a First Amendment public right of access attaches to a particular proceeding, courts consider 'whether the place and process have historically been open to the press and general public' and 'whether public access plays a significant positive role in the functioning of the particular process in question.'"  *Id*.  (quoting *Press-Enterprise,* 478 U.S. at 8).  Courts refer to this as the "experience" and "logic" test.  *In re Hearst Newspapers, LLC*, 641 F.3d 168, 175 (5th Cir. 2011).  While the Eighth Circuit has not ruled on whether the First Amendment right of access applies to sentencing documents, it relied heavily on  First Amendment jurisprudence in finding that the Sixth Amendment right to public access attaches to

7

sentencing.  *See United States v. Thompson*, 713 F.3d 388, 394 (8th Cir. 2013).  *Thompson* therefore counsels strongly in favor of applying the First Amendment right of access to sentencing and sentencing documents.

However, "the first amendment right of public access is not absolute; it is a qualified right."  *Gunn*, 855 F.2d at 574 (citing *Press-Enterprise,* 478 U.S. at 9; *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982)).  "The party seeking closure or sealing must show that such a restriction of the first amendment right of public access is necessitated by a compelling government interest."  *Id*. (citing *Press-Enterprise,* 464 U.S. at 510).  "If the district court decides to close a proceeding or seal certain documents, it must explain why closure or sealing was necessary and why less restrictive alternatives were not appropriate."  *Id*. (citing *Press–Enterprise*, 464 U.S. at 510–11).

Lastly, as stated above, the Eighth Circuit has found that the Sixth Amendment right to public access attaches to sentencing.  *Thompson*, 713 F.3d at  394 .  But, like the other rights of access, "[t]he Sixth Amendment right to public access is . . . not absolute."  *Id*.  "The right must 'give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information.'"  *Id*. (citing *Waller v. Georgia,* 467 U.S. 39, 46 (1984)) (notably, Judge Gruender concurred in the result but found that "it is the dictates of due process under the Fifth Amendment, and not the Sixth Amendment, that bestow upon a federal criminal defendant the right to insist upon a public sentencing."  *Id*. at 400 (citation omitted)).

"When a complete closure is contemplated, the presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest," while the ordering of a partial

closure need only "a showing of a 'substantial reason' for the partial closure." *Id*. at 394–95 (citations omitted). "A partial closure does not rise to the level of a Sixth Amendment violation if: (1) there is a substantial interest likely to be prejudiced, (2) the closure is no broader than necessary to protect that interest, (3) the trial court considers reasonable alternatives to closing the proceeding, and (4) the trial court makes findings adequate to support the closure." *Id*. at 395 (citation omitted).

In *Thompson*, the district court did not abuse its discretion when it ordered the defendant's family, the only members of the public in the audience, to exit the courtroom when a witness against the defendant testified. Importantly, the witness "expressed fear of testifying against [the defendant], an alleged gang member involved in a drive-by shooting who was implicated in other gang-related, violent activities by other witnesses." *Id*. at 396.

Applying *IDT* and *Thompson*, a district court recently denied a defendant's motion to seal. *See United States v. Dowdy*, No. 5:07-CR-50042, 2020 WL 5603927 (W.D. Ark. Sept. 18, 2020). The defendant, convicted of child pornography, moved to seal his "record," which the court interpreted as a request to seal the entire case. *Id*. at *5. The Court first found that the documents involved in the case, including "documents related to sentencing," were "clearly judicial records and the presumption of public access applies to them." *Id*. (citing *Thompson*, 713 F.3d at 393). Shifting to whether the defendant had articulated a "compelling reason" for the court to conceal the record, the court found that the only reason forwarded by the defendant was "the cost to his reputation." *Id*. The court did not find that constituted a compelling reason and denied the motion to seal. *Id*.

### 2.    Right of access in the other federal circuits

The governing law of the other circuits further supports that the public has a right of access to sentencing memoranda.  Six circuits—the Second, Fourth, Fifth, Seventh, Ninth, and Eleventh—have concluded or implied that the First Amendment right of access attaches during sentencing, including sentencing hearings, transcripts of those hearings, and associated sentencing memoranda.[3]  The Ninth Circuit has also held that the right applies to motions seeking a reduction of sentence under Rule 35 of the Federal Rules of Criminal Procedure.  *CBS, Inc. v. U.S. District Court*, 765 F.2d 823, 825 (9th Cir. 1985).  And, like the Eighth Circuit, the Ninth has held that the Sixth Amendment protects public access to sentencing.[4]

Applying the "experience and logic" inquiry to sentencing, courts have found that the right applies for many of the same reasons that it applies to pleas.  The Fifth Circuit's decision *In re Hearst Newspapers, LLC*, 641 F.3d 168 (5th Cir. 2011),[5] relied on the historical practice of publicly open sentencing proceedings.  *Id.* at 177; *see also Thompson*, 713 F.3d at 393 ("Sentencing hearings have also historically been open to the public." (citations omitted)).  As

---

[3] *Hearst Newspapers*, 641 F.3d at 176 ("[T]he public and press have a First Amendment right of access to sentencing proceedings."); *United States v. Biagon*, 510 F.3d 844, 848 (9th Cir. 2007) (applying First Amendment closure analysis to sentencing hearing); *United States v. Alcantara*, 396 F.3d 189,199 (2d Cir. 2005) ("[A]s with plea proceedings, a qualified First Amendment right of public access attaches to sentencing proceedings."); *United States v. Eppinger*, 49 F.3d 1244, 1253 (7th Cir. 1995); *United States v. Kooistra*, 796 F.2d 1390, 1391 (11th Cir. 1986) (remanding for tailoring findings where district judge closed sentencing proceedings); *In re Washington Post Co.*, 807 F.2d at 390; *see also United States v. Doe,* 962 F.3d 139 (4th Cir. 2020) (assuming without deciding that the First Amendment right of public access applied to a district court's order denying a defendant's 18 U.S.C. § 3582(c)(2) because it contained a reference to U.S. Sentencing Guidelines § 5K1.1); *United States v. Doe*, 870 F.3d 991 (9th Cir. 2017) (assuming without deciding that the first amendment right of public access applies to U.S. Sentencing Guidelines § 5K1.1-related documents); *United States v. Brice*, 649 F.3d 793, 794 (D.C. Cir. 2011) (assuming without deciding that the right applies at sentencing).

[4] *E.g.*, *United States v. Thompson*, 713 F.3d 388, 394 (8th Cir. 2013); *United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012) (holding that the Sixth Amendment right to a public trial attaches to sentencing proceedings, reasoning "we see no reason to give the public a greater right to insist on public proceedings than the individual for whose benefit the public trial right was created—the criminal defendant").

[5] *Hearst Newspapers* involved the sentencing of Oziel Cardenas-Guillen, former leader of the notoriously violent Gulf Cartel. 641 F.3d at 172. Based on safety concerns, the district court closed the sentencing hearing and sealed the filings and orders surrounding it. *Id.* at 173.

for logic, the Fifth Circuit drew comparisons between trials and sentencings: like a public trial, a public sentencing fosters public confidence in the criminal-justice system, encourages accuracy in factfinding, informs the general discussion of governmental affairs, allows for "review in the forum of public opinion," *id.* at 179, and provides "community therapeutic value," *id.* at 180 (quoting *Richmond Newspapers*, 448 U.S. at 570). The court also noted that the right of access becomes particularly important in cases involving guilty pleas, which lack a public trial or jury to regulate the adjudication. *Id.* at 177.

The First, Third, and Fourth Circuits sidestepped the constitutional issue by finding a common law right of access to sentencing documents.[6] In *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013), the First Circuit held that the common law right of access applied to sentencing memoranda and third-party sentencing letters. *Id.* at 57–58. The court reasoned that sentencing memoranda "bear directly on criminal sentencing in that they seek to influence the judge's determination of the appropriate sentence," and that "no principled basis [exists] for affording greater confidentiality as a matter of course to sentencing memoranda than is given to memoranda pertaining to the merits of the underlying criminal conviction, to which we have found the common law right of access applicable." *Id.* at 56. The First Circuit explained:

> Sentencing memoranda, which contain the substance of the parties' arguments for or against an outcome, are clearly relevant to a studied determination of what constitutes reasonable punishment. Thus, like substantive legal memoranda submitted to the court by parties to aid in adjudication of the matter of a defendant's innocence or guilt, sentencing memoranda are meant to impact the court's disposition of substantive rights."

---

[6] *See United States v. Chang*, 47 F. App'x 119, 122 (3d Cir. 2002) (granting access to sentencing documents based on the common law right instead of addressing the constitutional issue); *United States v. Harris*, 890 F.3d 480, 491–92 (4th Cir. 2018) (applying the common law right of access in a case regarding access to a sentencing memorandum).

*Id.*  Further, public access to such memoranda "allows the citizenry to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system" and "may serve to check any temptation that might be felt by either the prosecutor or the court to seek or impose an arbitrary or disproportionate sentence; promote accurate fact-finding; and in general stimulate public confidence in the criminal justice system by permitting members of the public to observe that the defendant is justly sentenced." *Id.* at 56–57 (citations, internal quotation marks, and alterations omitted).  For similar reasons, the court found that letters—both those attached to sentencing memoranda and sent to the court by third parties—were presumptively accessible. *Id.* at 59.  It remanded for a document-by-document balancing analysis and redaction if necessary. *Id.* at 60.

### C.     Applied to Hamm's sentencing memorandum

To determine whether the First Amendment right of access applies to Hamm's sentencing memorandum, the Court must assess "whether the place and process have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Zink*, 783 F.3d at 1112 (citation and internal quotations omitted).  Following dicta in *Thompson*, the Court concludes that these two prerequisites are met in the context of sentencing proceedings and documents.  First, "sentencing hearings have . . . been historically open to the public." *Thompson*, 713 F.3d at 393 (citing *Alcantara,* 396 F.3d at 197; *In re Wash. Post Co.,* 807 F.2d at 389).  Second, *Thompson* also noted that "sentencing hearings are 'trial like' in that witnesses are sworn and testify, factual determinations are made, and counsel argue their positions," and how "[t]he value of encouraging witnesses to come forward and discouraging perjury remain salient at perjury." *Id.* (quoting *Rivera*, 682 F.3d at 1228.).  These findings, among others, led the Eighth Circuit to

conclude that "public access at a sentencing hearing plays a significant role in its functioning . . .." *Id.* at 394; *see also In re Hearst Newspapers, LLC*, 641 F.3d at 177–181 (discussing how public access plays a significant positive role in the functioning of sentencing hearings); *Alcantara,* 396 F.3d at 196–99 (same)). Accordingly, the Court concludes that the First Amendment right of access applies to Hamm's sentencing memorandum.

However, the First Amendment right of access is not absolute. *Gunn*, 855 F.2d at 574 (citations omitted). "The party seeking closure or sealing must show that such a restriction of the first amendment right of public access is necessitated by a compelling government interest." *Gunn*, 855 F.2d at 569 (citations omitted). Here, Hamm seeks to keep the memorandum sealed to limit the exposure of his background. In other words, Hamm seeks prevent the public from scrutinizing his past in an effort to preserve his reputation. Such a justification does not rise to the level of a compelling government interest, and thus the Court concludes that Hamm has not overcome the First Amendment right of access. Therefore, the Court denies the motion to seal.

The Court also concludes that the common law right of access applies to Hamm's sentencing memorandum. To evaluate whether the common law right of access attaches to Hamm's sentencing memorandum, the Court must first determine whether Hamm's sentencing memorandum constitutes a judicial record, and then whether Hamm overcomes the common-law right of access that would otherwise apply. *Flynt*, 885 F.3d at 511. While the Eighth Circuit has not definitely ruled on whether a sentencing memorandum constitutes a judicial record, case law supports that a document central to the court's issuance of a criminal sentence constitutes a "judicial record." *See Steele v. City of Burlington, Iowa*, 334 F. Supp. 3d 972 (S.D. Iowa 2018) (collecting cases); *Dowdy*, 2020 WL 5603927, at *5; *Kravetz*, 706 F.3d  at 56 (finding that there is "little doubt" that sentencing memoranda constitute "'judicial records' entitled to a common

law presumption of access"). Thus, the common law right of access applies to Hamm's sentencing memorandum.

Next, the Court considers whether Hamm has overcome the presumption of the common law right of access. Because the sentencing memorandum directly seeks to influence the sentence that this Court imposes, the memorandum is entitled to a strong presumption of access because it plays a direct role "in the exercise of Article III judicial power." *IDT*, 709 F.3d at 1224. To overcome this presumption, Hamm must offer a compelling reason to keep the sentencing memorandum under seal. As stated above, Hamm seeks to keep the memorandum sealed to prevent the public from scrutinizing his past in an effort to preserve his reputation. That does not constitute sufficient reason to warrant the record to be sealed. *Dowdy*, 2020 WL 5603927, at *5.

Hamm also argues that his "status as a community figure heightens the level of scrutiny regarding his history and provides greater incentive for this Court to grant defendant's request for confidential information to remain sealed." Doc. 59 at p. 1. The Court agrees that Hamm's status of a public figure increases the likelihood that the information in Hamm's sentencing memorandum will be scrutinized and perhaps even disseminated among the general public. This heightened risk of dissemination of the personal details contained in Hamm's sentencing memorandum may lend support to sealing the memorandum. But, heightened scrutiny also supports public availability as "[t]he primary rationales for [the common law] right are the public's confidence in, and the accountability of, the judiciary." *Flynt*, 885 F.3d at 511.

Sealing sentencing materials of public or community figures would contravene the United States' "rich and proud tradition of conducting public criminal trials and sentencing proceedings." *Hearst Newspapers,* 641 F.3d at 177 (cleaned up). A matter that may draw the

14

attention of the public makes a stronger case for keeping the memorandum available to the public. *See id*. at 177–78 (citing the public sentencings of numerous high-profile defendants). Sealing likely lessens the public's confidence in the judiciary and may cause the public to wonder whether the Court cut Hamm a break not because of legitimate sentencing factors under Section 3553(a) but because of his public-figure status. Moreover, while Hamm's status as a public figure may lead to substantial scrutiny and cause harm to his reputation, such harm alone does not warrant the sealing of his sentencing memorandum. *Dowdy*, 2020 WL 5603927, at *5; *see also Flynt*, 885 F.3d at 511; *Hearst Newspapers,* 641 F.3d at 177–78.

Lastly, Hamm argues that a redacted sentencing memorandum would not be a sufficient alternative because "the nature and description of [the sensitive topics] are so intertwined with the body of the memorandum as to make redaction of this information impractical." Doc. 59 at p. 1. Though not cited by Hamm, the Eighth Circuit has stated that "[c]onfidential information may be so embedded in a pleading that line-by-line redaction is impossible." *IDT,* 709 F.3d at 1224 (citing *Gunn,* 855 F.2d at 574). However, both *IDT* and *Gunn* suggest that the consideration of whether "line-by-line redaction" is possible comes only after the court has decided that sealing is appropriate.

In *IDT*, even though the district court did not abuse its discretion in concluding that sealing "confidential and competitively sensitive information" outweighed the public's right to access, the Eighth Circuit remanded because "it was unclear . . . why the court concluded that the *entire* document should remain under seal." *IDT*, 709 F.3d at 1224 (emphasis in original). Before sealing the entire document, the district court needed to consider whether portions of the records are "amenable to public access without jeopardizing . . . confidentiality," or whether "[o]n the other hand, confidential information [is] so embedded in a pleading that line-by-line

redaction is impossible, or redaction [is] insufficient to protect the interests that justify sealing." *Id*.

In *Gunn*, the Eighth Circuit affirmed the district court's sealing of search warrants because the sealing was necessary to preserve an ongoing criminal investigation. Additionally, the Eighth Circuit agreed with the district court that the less restrictive measure of "line-by-line redaction of the sealed documents was not practicable." *Gunn*, 855 F.2d at 574. Thus, *IDT* and *Gunn* instruct that if a district court deems sealing appropriate, these courts must also consider whether the entire document must be sealed, or whether the less restrictive measure of redaction would be practicable.

Accordingly, *IDT* and *Gunn* indicate that consideration of whether "line-by-line redaction" would be practicable need not occur if the court determines that the documents at issue should not be sealed. Because the Court has deemed that Hamm has not met his burden to seal, it need not address Hamm's concern that "line-by-line redaction" would not be practicable; the Court's review of the memorandum, however, indicates that redaction would be possible. Moreover, adopting Hamm's position would swallow the rule because attorneys could purposely draft intertwined sentencing memoranda (or any other document, for that matter) to avoid any disclosure. Attorneys possess the ability to draft carefully and appropriately to comply with applicable law favoring disclosure. Accordingly, to avoid creating that perverse incentive, the Court declines to adopt Hamm's "intertwined" rationale.

### D.     The United States' response

Other than limited exceptions not applicable here, the Court's Local Rules do not allow parties to unilaterally file materials under seal. E.D. Mo. L.R. 13.05. The party seeking to file under seal must file a motion. In light of the governing law, this makes sense. Nonetheless, the

United States filed its response under seal, without a motion.  Doc. 63.  The Court accordingly has nothing on which to base a sealing decision, other than a review of the document itself; and the Court's review does not lead the Court to conclude that the document should be sealed.  The United States may withdraw the document, re-file it unsealed, or file a proper motion to seal, keeping in mind the applicable legal standards.

## II.    Conclusion

For all these reasons, the Court denies Hamm's [59] motion to seal without prejudice.  As noted, the Court will allow Hamm, at his option, to file a motion to continue the sentencing hearing so that the parties may brief more fully and the Court may further consider the sealing issue, or proceed with sentencing as scheduled.  If Hamm opts for the latter, the Court will consider only those materials in the sentencing memorandum that Hamm and his counsel choose to put on the public record at the sentencing hearing.  The United States may withdraw its Response, Doc. 63, re-file it unsealed, or file a proper motion to seal, keeping in mind the applicable legal standards.  Regardless, for purposes of sentencing, the Court will consider all other materials as is appropriate under the law.


So Ordered this 17th day of February 2021.


**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**