**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cr-00613 SRC |
| | ) | |
| HARRY JOHN HAMM, | ) | |
| | ) | |
| Defendant(s). | ) | |

**<u>Memorandum and Order</u>**

In August 2019, a grand jury indicted Defendant Harry John Hamm for crimes Congress deemed "serious," specifically two counts of possession of child pornography and one count of accessing with intent to view child pornography.  Docs. 1–2.  Hamm has since pleaded guilty to those crimes, and the Court granted him leave to brief certain issues before determining whether to detain him or allow him to voluntarily surrender to the Bureau of Prisons at a later date.  *See* Docs. 68 and 80.  Although Hamm agrees that he is subject to mandatory detention under the Mandatory Detention of Offenders Convicted of Serious Crimes Act, specifically 18 U.S.C. § 3143(a)(2), he argues that the Court should grant his request for voluntary surrender because he demonstrates "exceptional reasons" under 18 U.S.C. § 3145(c).  Docs. 64 and 77.  The Court first assesses whether it possesses the authority to release, under section 3145(c), a defendant whom Congress has determined must be detained before then ruling on Hamm's request for voluntary surrender.

## I.     Background

After being indicted, Hamm pleaded not guilty. The Court[1] released Hamm on a

personal-recognizance bond and placed him on location monitoring.  Doc. 7.  Since then, Hamm

violated the conditions of bond and the rules of location monitoring to the point where he

"received several warnings regarding his movement and non-compliance on location

monitoring."  Doc. 22 at p. 2; *see also* Docs. 19 and 38 (noting the "culmination of the

aforementioned violations and the severity of [Hamm's] previous violation of maintaining a

social media account, and [Hamm's] seemingly blatant disregard for the rules of the location

monitoring program[.]").  With the monitoring and efforts of the Court's Pretrial Services Office,

Hamm's conduct improved to the point where his restrictions on bond were loosened, though he

remained on location monitoring.  Doc. 42.

In February 2021, Hamm pleaded guilty to two counts of possession of child

pornography and one count of accessing with intent to view child pornography.  Docs. 65 and

66.  Hamm advised the Court that he preferred to be sentenced on the same day he pleaded

guilty.  Docs. 48, 49, and 50.  The Court held a change-of-plea hearing and accepted Hamm's

plea of guilty.  Doc. 65.  Hamm initially acknowledged that he was subject to mandatory

detention.  Doc. 64 at ¶ 2.  But after pleading guilty, Hamm changed his position on whether the

mandatory-detention statute applies to child-pornography crimes, and asked the Court to

continue his sentencing to a much later day.  Doc. 75 at 49:21-50:5, 52:24-59:2.  The Court

allowed him to brief various issues before sentencing, and re-set the voluntary-surrender hearing

twice.  Doc. 68 at 17; Docs. 82, 85, 86.  On April 26, 2021, the Court sentenced Hamm and then

---

[1] Per the Court's procedures, a United States Magistrate Judge handled pretrial motions, including detention.  *See* E.D. Mo. Local Rule 2.08; Doc. 4.

held a hearing on Hamm's voluntary-surrender motion.  For the reasons discussed below, the Court orders Hamm detained.

## II.     Discussion

Under the United States Constitution, a person accused of a crime enjoys a presumption of innocence.  U.S. Const. amend. V; U.S. Const. amend. XIV; *Coffin v. United States*, 156 U.S. 432, 453 (1895); *In re Winship*, 397 U.S. 358, 363 (1970).  As a corollary to the presumption of innocence, the accused person also enjoys the right not to be held in custody, typically jail, unless the prosecution meets its burden to show that a person poses a risk of fleeing, or otherwise poses a danger to persons or the community.  U.S. Const. amend. VIII; 18 U.S.C. § 3142; *United States v. Kisling,* 334 F.3d 734 (8th Cir. 2003).

Once a person either pleads guilty or is found guilty by a judge or jury, the presumption of innocence no longer applies.  In the case of a guilty plea, the person has admitted his guilt, as Hamm has done here.  *See* Docs. 66 and 75.  With limited exceptions, Congress has since 1984 required federal courts to detain defendants who are convicted of crimes, whether by conviction after trial or by guilty plea.  *See* Bail Reform Act of 1984, Pub. L. No. 98-473, § 302, 98 Stat. 1976, 1978–79, 81–82 (codified as amended at 18 U.S.C. §§ 3142(e)-(f), 3143).  In this district, sentencing typically occurs 90 or more days after a person pleads or is found guilty.  Congress included in the Bail Reform Act provisions for detention of convicted defendants awaiting sentencing.  18 U.S.C. § 3143 (1984).

### A.     The Mandatory-Detention Act

Before 1990, federal district courts could release a convicted defendant only upon finding by clear and convincing evidence that the defendant "was not likely to flee or pose a danger to the safety of any other person or the community."  *See* 18 U.S.C. § 3143(a) (1984).  That year,

Congress passed the Mandatory-Detention Act, mandating that courts detain defendants convicted of certain crimes that Congress deemed "serious."  Pub. L. No. 101-647, § 902, 104 Stat. 4926 (1990) (codified as amended at 18 U.S.C. §§ 3143, 3145).  However, the Act included two exceptions to mandatory detention.  One, under section 3143(a)(2), a judge may release a defendant found guilty of an offense listed under section 3412(f)(1)(A)–(C) and awaiting imposition or execution of sentence if:

> (A)
>
>> (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>>
>> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> (B)  the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2) (1990).

Two, Congress inserted a separate exception in section 3145(c) (1990), set forth in italics here:

> **(c) Appeal from a release or detention order.**--An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. *A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.*

At Hamm's plea hearing, the Court raised the question of whether section 3145(c) only applies to an "[a]ppeal" of a release or detention order or whether a district court may, in the first instance, allow a convicted defendant to remain at large on a finding of exceptional reasons.

4

**B.**     **Which court has authority to release a convicted defendant for exceptional reasons**

Section 3145(c) appears in a statute that deals with appeals of detention orders, indeed the title of section 3145 is "Review and appeal of a release or detention order."  As explained below, a split of authority exists on whether section 3145(c) authorizes district courts to order a convicted defendant released for "exceptional reasons" (the broad construction), or only authorizes courts of appeals to do so (the narrow construction).

The Eighth Circuit has not expressly addressed the issue, but it has implied that district court judges may release defendants under section 3145(c) for exceptional reasons.  For example, in *United States v. Little*, the Eighth Circuit reviewed a district court's release of a defendant under section 3145(c) for exceptional reasons.  485 F.3d 1210 (8th Cir. 2007).  The Court reversed the district court, finding that the circumstances relied upon did not rise to "exceptional reasons."  *Id*. at 1211.  *Little* therefore implies that district courts possess the authority to release defendants under section 3145(c) because it only reversed after finding that the defendant did not offer exceptional reasons, not because the district court did not have the authority to release the defendant.  *Id*.; *see also United States v. Mahoney*, 627 F.3d 705 (8th Cir. 2010); *United States v. Nickell*, 512 F. App'x 660 (8th Cir. 2013); *United States v. Schmitt*, 515 F. App'x 646 (8th Cir. 2013); *United States v. Larue*, 478 F.3d 924 (8th Cir. 2007); *United States v. Brown*, 368 F.3d 992 (8th Cir. 2004).

However, the Eighth Circuit has yet to conduct an extensive statutory interpretation of section 3145(c) and has not definitively spoken on the issue.  Mindful that the Court must stay within the boundaries of its statutory authority, the Court finds it appropriate to examine the statute in detail here.

The Court begins by examining the defined term "judicial officer."  As used in sections 3141–3151, judicial officer is defined as, "unless otherwise indicated, any person or court authorized pursuant to section 3041 of this title, or the Federal Rules of Criminal Procedure, to detain or release a person before trial or sentencing or pending appeal in a court of the United States, and any judge of the Superior Court of the District of Columbia."  18 U.S.C. § 3156(b)(1) (1990).  That definition includes a United States District Judge.  *See* 18 U.S.C. § 3041 (For any offense against the United States, the offender may, *by any justice or judge of the United States* . . . be arrested or imprisoned or released[.]" (emphasis added)).

While at first glance this matter of interpretation appears straightforward given the statutory definition, the statutory context within which the "exceptional circumstances" exception appears muddies the water.   As parts of the Bail Reform Act, sections 3141–43 and 3145 naturally flow together, each addressing a distinct aspect of the release-and-detention process.  First, section 3141 (1990) mandates that defendants pending trial, sentencing, or appeal shall be ordered either released or detained and specifies the judicial officer responsible for issuing an order depending on the stage of proceedings.  Section 3142 (1990) then provides specific instructions regarding whether a defendant pending trial must be released or detained, while section 3143 (1990) provides specific instructions regarding whether a defendant pending sentencing or appeal must be released or detained.

Section 3145 addresses the process for reviewing release and detentions orders, as well as the process for appealing a release or detention order.  Section 3145(a) (1990) specifies that "the court having original jurisdiction over the offense," meaning the district court where the prosecution is pending, *see United States v. Evans,* 62 F.3d 1233, 1235 (9th Cir. 1995), *United States v. Torres*, 86 F.3d 1029, 1031 (11th Cir. 1996), *United States v. El Edwy*, 272 F.3d 149,

154 (2d Cir. 2001), *United States v. Vega*, 438 F.3d 801 (7th Cir. 2006), may review a release or detention order entered by "a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court[.]"

On the other hand, section 3145(c) (1990), titled "Appeal from a release or detention order," states that 28 U.S.C. § 1291 and 18 U.S.C. § 3731 govern appeals from a release or a detention order. Both of those provisions explicitly provide that the Federal Courts of Appeals have jurisdiction over appeals from the final decisions of district courts.

The "exceptional reasons" exception appears in section 3145(c), only after the first two sentences expressly addressing federal-appellate-court review of detention orders. The placement of this exception in a subsection dealing with courts-of-appeals review of detention orders necessarily raises the question of whether the next sentence, allowing release when "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate[,]" is limited only to appellate judges. The determination of this question calls for the analysis of competing canons of construction.

### 1.    Title and interpretive-direction cannons of construction

No canon of construction is absolute. *See* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 59 (2012). Rather, they are guides that need not be conclusive. *Id.* (quoting *Chickasaw Nation v. United States*, 534 U.S. 84, 93 (2001)). Among the competing canons at issue here include the "title and headings" canon and "interpretative-direction" canon. *Id.* at §§ 35, 36.

While the title of a section aids our interpretation of ambiguous text, "the title or heading should never be allowed to override the plain words of a text." *Id.* at 222. Moreover, "it is very rare that a defined meaning can be replaced with another permissible meaning of the word on the

basis of other textual indications; the definition is virtually conclusive." *Id*. at 228. Thus, the Court must consider whether the statutory definition of "judicial officer" is sufficiently clear to override the title of section 3145(c). Particularly, the definition's phrase "unless otherwise indicated" warrants further scrutiny.

As the Fourth Circuit explained, "when Congress has altered the . . . definition of 'judicial officer' in other provisions within the Bail Reform Act—that is, when it has 'otherwise indicated' that the term should be read differently—it has done so explicitly." *U.S. v. Goforth*, 546 F.3d 712, 715 (2008). For instance, section 3141(b) (1990) states that "[a] judicial officer *of a court of original jurisdiction over an offense*, or a judicial officer *of a Federal appellate court*," possesses the authority to order release pending sentence or appeal.

By contrast, the third sentence of section 3145(c) simply refers to a "judicial officer," offering no additional specifications of a particular type of "judicial officer." As it did in section 3141(b), Congress could have clarified that, as used in section 3145(c), judicial officer refers to a specific type of judicial officer, such as a federal appellate judge or district judge. The failure to limit "judicial officer" in such a manner may be treated as significant, for the omitted-case canon instructs that "[t]he absent provision cannot be supplied by the Courts." SCALIA & GARNER at 94; *see also id*. ("To supply omissions transcends the judicial function." (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926) (Brandeis, J.))).

### 2.    Contextual interpretation canons

However, "statutory construction . . . is a holistic endeavor." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). A provision that appears "ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the

rest of the law." *Id.* (citations omitted).  Therefore, "since the meaning of statutory language, plain or not, depends on context[,]" the Court "follow[s] the cardinal rule that a statute is to be read as a whole." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991); *see also United States v. McAllister*, 225 F.3d 982, 990 (8th Cir. 2000); *United States v. Talley*, 16 F.3d 972, 976 (8th Cir. 1994); SCALIA & GARNER at p. 167 ("Context is a primary determinant of meaning.").  In addition to applying the whole-text canon, *see* SCALIA & GARNER at § 24, the Court also applies the many contextual canons "derived from the whole-text canon[.]" *Id.* at pg. 168; *see also id.* at §§ 25–38.

While courts finding that section 3145(c) applies to district courts properly focus on the definition of "judicial officer," these narrowly-focused opinions generally fail to sufficiently address both the "exceptional reasons" exception's placement within the statutory scheme and the "unless otherwise indicated" provision of the definition of "judicial officer."  *United States v. Chen*, 257 F. Supp. 2d 656 (S.D.N.Y. 2003), a leading case holding the narrow view that only appellate judges may release defendants for "exceptional reasons," criticized courts taking the broad construction for giving "cursory treatment" to the question of whether district courts may release a defendant under the "exceptional reasons" exception.  *Id.* at 659–60.  *Chen* focused on how the context within which the "exceptional reasons" exception appears supports a finding that only appellate judges may release a defendant under section 3145(c).

*Chen* noted that "[t]he title of the subsection . . . and the use of 'appeal' in place of 'review' weigh heavily in favor of reading section 3145(c) to apply only to appellate courts."  *Id.* at 660.  Moreover, *Chen* explained, the appellate review section 3145(c) provides "is governed by 28 U.S.C. § 1291 and 18 U.S.C. § 3731, both of which relate *solely* to review of a final order of a district court by a court of appeals."  *Id.* at 660–61 (emphasis in original).

*Chen* then focused on a particularly troublesome issue facing the broad position—the relevance of placing the "exceptional reasons" exception in section 3145(c), a section dealing with appeals, rather than in sections that provide for district-court review or authority, such as sections 3143 or 3145(a) or (b).  As *Chen* explained:

> [i]f Congress had intended the "exceptional reasons" provision of section 3145(c) to be an available alternative to mandatory detention under section 3143(a)(2) and (b)(2), it is surely misplaced in a section governing appellate review. Had Congress simply added the 'exceptional reasons' language to section 3143, there would be no question as to its availability to district courts. The placement of the 'exceptional reasons' provision is especially telling in light of the fact that it was adopted at the same time as the mandatory detention amendments to section 3143. Why would Congress, primarily concerned with amending section 3143, place the "exceptional reasons" provision in an entirely different section? The only plausible answer is the one supported by the text itself: Congress intended section 3145(c) for the appellate courts alone.

*Id*. at 661.  The Court agrees that Congress could have provided clarity by placing the exceptional-reasons exception within section 3143.  This same logic applies to the use of "judicial officer" in section 3145(c).  Congress could have easily specified, as it did elsewhere in the statute, that "judicial officer" in section 3145(c) referred only to appellate judges; but Congress didn't, instead leaving the courts to have to determine whether the "unless otherwise indicated" proviso of section 3156(b)(1) applies.

Additionally, *Chen* suffers from the same flaw it accuses courts taking the broad position of, giving only cursory analysis of the difficulty the definition of "judicial officer" presents to its position.  *Chen*'s full discussion of the definition states as follows:

> although the term 'judicial officers' concededly includes district judges, its use in section 3145(c) is narrower for the reasons already discussed. Statutory terms must be read in context, even when they are given explicit definitions. In the context of a provision dealing with appellate review, 'judicial officer' must be read to mean only appellate judges.

*Id*. at 663.  First, as explained above, this position gives undue weight to the title of the section 3145(c) at the expense of the plain meaning of the text.  *See also Trainmen v. Baltimore & Ohio R. Co.,* 331 U.S. 519, 528–529 (1947) ("[T]he title of a statute and the heading of a section cannot limit the plain meaning of the text.").  Second, while the Eighth Circuit has looked to context when interpreting statutes, *United States v. Jungers,* 702 F.3d 1066, 1069 (8th Cir. 2013), *Does v. Gillespie*, 867 F.3d 1034, 1043 (8th Cir. 2017), courts must be careful not to place undue weight on a provision's placement within a statute.  *See Yates v. United States*, 574 U.S. 528, 559–60 (2015) (Kagan, J. dissenting) (criticizing the plurality for "divin[ing] meaning" from a provision's "position" within a statute when no canon of construction supports that interpretative method (citing SCALIA & GARNER at §§ XI-XVI).

 *Chen* also based its conclusion upon an erroneous belief that "there is *no* suggestion in the statute or its meager legislative history that [3145(c)] was intended to be available to the district courts."  257 F. Supp. 2d at 664 (emphasis in original).  Though this Court frowns upon resorting to legislative history, *see BNSF Ry. Co. v. Loos, 586 U.S. ——*, 139 S. Ct. 893, 906 (2019) (Gorsuch, J., dissenting) (recognizing that "statutory history," unlike "unenacted legislative history," is "the sort of textual evidence everyone agrees can sometimes shed light on meaning"), section 3145(c)'s legislative history does provide some indication that it includes district judges.  During the legislative process, an earlier version of the "exceptional reasons" amendment to section 3145(c) stated that it could be applied "by a court of appeals or a judge thereof."  136 Cong. Rec. S6, 491 (daily ed. May 17, 1990) (Section 1152—Mandatory Detention); *see* Jonathan S. Rosen, *An Examination of the "Exceptional Reasons" Jurisprudence of the Mandatory Detention Act: Title 18 U.S.C. §§ 3143, 3145(c),* 19 VT. L. REV. 19, fn.41 (1994).  In the final version of the amendment, however, the language was changed to say that

the determination could be made by "the judicial officer."  If Congress had intended for the "exceptional reasons" authority to apply exclusively to circuit judges, it could have easily left the original language in place.  The substitution of the broader term "judicial officer" indicates that Congress may have intended to include district judges among those who could grant "exceptional reasons" relief.[2]  But as explained in the next section, this does not end the inquiry.

### 3.    In pari materia—construction with body of detention laws

Therefore, if limited to interpreting section 3145(c) within the Bail Reform Act/Mandatory Detention Act alone, one might conclude that section 3145(c) applies to district court judges, in an admittedly very close call.  However, while statutory text should be interpreted harmoniously with other provisions of the same statute, because statutes are also part of an entire *corpus juris*, statutory text should also be interpreted harmoniously with laws *in pari materia*—laws dealing with the same subject matter.  SCALIA & GARNER at § 39.  In short, "[s]tatutes *in pari materia* are to be interpreted together, as though they were one law."  *Id.*; *see also United States v. Stewart*, 311 U.S. 60, 64 (1940); *United States v. Clark,* 926 F.3d 487, 489 (8th Cir. 2019) (first citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 315–167 (2006) (explaining that "under the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read as if they were one law" (internal quotation marks and citation omitted)); then citing SCALIA & GARNER at p. 252)).  This canon "rests on two sound principles: (1) that the body of law should make sense, and (2) that it is the

---

[2] One court found that the passive voice in section 3145(a) and (b) compared with the active voice in section 3145(c) served as indication of Congress's intent.  *See United States v. Williams*, 903 F. Supp. 2d 292, 300 (M.D. Pa. 2012).  But *Williams*'s analysis does not take into account the carve out of "other than a Federal appellate court" in subsections (a) and (b) that led to the use of passive voice, and thus the Court finds this reasoning unpersuasive.

responsibility of the courts, within the permissible meanings of the text, to make it so."  SCALIA
& GARNER at p. 252.

As courts taking the narrow position have stressed, "[t]he language of other federal rules
governing release bolsters the view that 18 U.S.C. § 3145 only applies to appellate courts."
*United States v. DiMattina*, 885 F. Supp. 2d 572, 588 (E.D.N.Y. 2012).  The Supreme Court
prescribes the federal rules of procedure and submits them to Congress.  *See* 28 U.S.C. §§ 2071–
2077.  "Congress at all times maintains the power to repeal, amend, or supersede its delegation
of authority or the rules of procedure themselves."  *Jackson v. Stinnett*, 102 F.3d 132, 134 (5th
Cir. 1996) (citations omitted).

Both the district-court and appellate-court rules form part of the entire *corpus juris* of
federal detention law and therefore inform the question at issue here.  Federal Rule of Criminal
Procedure Rule 46(c), which applies to district courts, states that "[t]he provisions of 18 U.S.C. §
3143 govern release pending sentencing or appeal."  In contrast, Federal Rule of Appellate
Procedure Rule 9(c), which applies to courts of appeals, states that "[t]he court must make its
decisions regarding release in accordance with the applicable provisions of 18 U.S.C. §§ 3142,
3143, *and 3145(c)*."  *See also Chen*, 257 F. Supp. 2d at 661–62.

Notably, both provisions have been amended since the insertion of the "exceptional
reasons" language in Section 3145(c), *see* Fed. R. Crim. P. 46(c) as amended in 2002, Fed. R.
App. P. 9(b) as amended in 1994, lending further support to the conclusion that the drafters of
these rules understood section 3145(c) to apply only to appellate courts.  Specifically, Congress
enacted sections 3143 and 3145 in 1984.  Pub. L. No. 98-473, § 302, 98 Stat. 1981–82 (codified
as amended at 18 U.S.C. §§ 3142(e)-(f), 3143).  The same year, criminal rule 46(c) was amended
to include the language that "[t]he provisions of 18 U.S.C. § 3143 govern release pending

13

sentencing or appeal." *See* Pub. L. No. 98-473, § 209, 98 Stat. 1987 ("Rule 46 is amended . . . in subdivision (c), by striking out 3148 and inserting in lieu thereof "3143[.]").  Congress added the mandatory-detention provisions of section 3143(a)(2) and the "exceptional reasons" language to section 3145(c) in 1990.  Pub. L. No. 101-647, § 902, 104 Stat. 4826, 4926 (1990) (codified as amended at 18 U.S.C. §§ 3143, 3145).  Four years later, in 1994, 9(c) was amended to include the language that the appellate court "must make its decision regarding release in accordance with the applicable provisions of 18 U.S.C. §§ 3142, 3143, and 3145(c)."  *See* Fed. R. App. P. 9 advisory committee's note to 1994 amendments.  In 2002, several years after both Congress's enactment of the "exceptional reasons" provision in section 3145(c) and the amendment of FRAP 9(c) to include the reference to section 3145(c), criminal rule 46(c) was again amended to read as it now does:  "[t]he provisions of 18 U.S.C. § 3143 govern release pending sentencing or appeal."  *See* Fed. R. App. P. 46 advisory's committee notes to 2002 amendments.  That criminal rule 46(c)—applicable to district courts—was amended after both the enactment of section 3145(c) and amendment of FRAP 9(c) yet did not include any reference to section 3145(c) provides strong evidence that section 3145(c) does not apply to district courts but instead only applies to appellate judges.  *See e.g.*, *Chen*, 257 F. Supp. 2d at 662; *DiMattina*, 885 F. Supp. 2d at 587; *see also In re Sealed Case*, 242 F. Supp. 2d 489 (E.D. Mich. 2003) (discussing the 2002 amendments to FRAP 9 in determining whether a district court may release a defendant under section 3145(c)).

Thus, as summed up in *Chen*, "[a]ny ambiguity about the 'exceptional reasons' provision created by its placement in section 3145(c) is therefore answered by Congress' clear statement: a district court considering release pending sentence or appeal is to look *only* at section 3143; a court of appeals should look at sections 3143 *and* 3145(c)." 257 F. Supp. 2d at 662 (emphasis in

14

original).  Even if one does not consider Congress to have made the clear statement that *Chen*

finds, the text of these two rules harmonizes the inconsistency in the statutes when other attempts

to do so have not.

The inability of courts taking the broad position to persuasively account for these rules

tilts the balance towards section 3145(c) applying only to appellate judges.  For example, the

Eleventh Circuit dismissed the district court's reliance on Rule 46(c) by stating, without further

explanation or authority, "the mention of § 3143 in Rule 46(c) does not necessarily preclude a

district court from looking to other code sections when required by statute."  *United States v.*

*Meister*, 744 F.3d 1236, 1239 n. 4 (11th Cir. 2013).  *Meister*'s cursory treatment runs counter to

the well-established interpretative principle of *expressio unius*.  *See* SCALIA & GARNER at § 10.

*United States v. Harris* disregarded *Chen*'s reliance on Rule 46(c) because "the Federal Rules of

Criminal Procedure do not refer to any portion of § 3145, and §§ 3145(a) and (b) indisputably

authorize district court judges to detain or release criminal defendants, as appropriate." 451 F.

Supp. 3d 64, 70 (D.D.C. 2020).  But *Harris* focuses of the procedural avenue for release, rather

than the basis on which a district court may release a defendant; and, it assumes without any

explanation that Rule 46(c) would have some reason to mention the review provisions of sections

3145(a) and (b) when the text of the rule itself does not suggest such a reason.  Sections 3145(a)

and (b) do not provide a separate basis on which district courts may release a defendant; instead

those sections authorize a district court to release a defendant upon determining the defendant

should have been released under proper application of section 3143.  Thus, release pursuant to

sections 3145(a) and (b) are still governed by section 3143, as set forth in Rule 46(c).

Additionally, *Meister's* conclusion that permitting district courts to issue orders under

section 3145(c) would result in appellate courts reviewing orders they alone could issue, 744

15

F.3d at 1239, stems from a false premise that Rule 9 limits appeals to only the grounds considered by the district court.  Rule 9(a)(2) (applicable to Rule 9(b)) expressly provides that appellate courts may consider additional material, stating "the court of appeals must promptly *determine the appeal on the basis of the papers, affidavits, and parts of the record that the parties present or the court requires.* Unless the court so orders, briefs need not be filed." Relatedly, *Meister's* conclusion does not acknowledge that under FRAP 9, a single appellate judge's release order during the pendency of the appeal would be subject to review by a panel on "disposition of the appeal."  *See* Fed. R. App. P. Rule 9(a)(3), applicable under Fed. R. App. P. 9(b).  FRAP 9(a)(3) provides that "[t]he court of appeals *or one of its judges* may order the defendant's release *pending disposition of the appeal*."

Thus, under "the mandate of Fed. R. App. P. 9(b), the courts of appeals have the ability, indeed the responsibility, to make independent findings in proceedings arising under the Bail Reform Act."  *United States v. Salome*, 870 F. Supp. 648, 653 (W.D. Pa. 1994).  The ability of appellate courts to consider additional materials and make independent findings presents a procedure consistent with each competing statute—sections 3143 and 3145, Fed. R. Crim. P. 46(c), and Fed. R. App. P. 9(b)—that an individual ordered detained may appeal that order and also argue to the appellate court that he meets the requirements to be released for "exceptional reasons."

Finally, the Court notes that except for the Eleventh Circuit in *Meister*, no other circuit courts have even addressed the relevance of Fed. R. Crim. P. 46(c) and Fed. R. App. P. 9(b) to whether section 3145(c) applies to district judges.  *See Goforth*, 546 F.3d 712; *United States v. Cook*, 42 F. App'x 803, 804 (6th Cir. 2002); *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992); *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992); *United States v.*

*Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991); *United States v. Garcia*, 340 F.3d 1013, 1022 (9th Cir. 2003); *United States v. DiSomma*, 951 F.2d 494 (2d Cir. 1991). The failure to account for Rule 46(c) and Rule 9 further bolsters this Court's conclusion that section 3145(c) only applies to appellate judges.

For the reasons stated, the Court concludes that it lacks authority to release a defendant for "exceptional reasons" pursuant to section 3145(c). However, following the approach taken in *DiMattina*, because the Eighth Circuit may continue its implicit assumption that district courts have authority to release defendants for "exceptional reasons," the Court considers whether Hamm's circumstances merit release under section 3145(c).

### C. Hamm's motion for voluntary surrender

Although subject to mandatory detention under section 3143(a)(2), the Court may grant Hamm's request for voluntary surrender if he meets the requirements for release under section 3143(a)(2) or, if it were to apply to district courts, section 3145(c).

#### 1. Voluntary surrender under section 3143(a)(2)

Under section 3143(a)(2), the Court may allow Hamm to voluntarily surrender if it "finds there is a substantial likelihood that a motion for acquittal or new trial will be granted[,] or . . . an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person." 18 U.S.C. § 3143(a)(2)(A)(i)-(ii) (1990). Even if Hamm satisfies one of these conditions, he may only be released if he proves "by clear and convincing evidence that [he] is not likely to flee or pose a danger to another other person or the community." *Id*. at § 3143(a)(2)(B) (1990); Fed. R. Crim. P. 46(c) ("The burden of establishing that the defendant will not flee or pose a danger to the safety of any other person rests with the defendant.").

The Court may not release Hamm under section 3143(a)(2) because neither condition listed in subsection 3143(a)(2)(A)(i)-(ii) has been satisfied. Hamm pleaded guilty instead of

17

proceeding to trial, and thus subsection 3143(a)(2)(A)(i) does not apply.  The second condition provides no relief to Hamm because the United States recommended a term of imprisonment for Hamm.  *See* Doc. 78 at p. 4.  (At the sentencing hearing, the United States sought a sentence at the top end of the guidelines range.)  Accordingly, unable to satisfy either condition, Hamm may not be released under section 3142(a)(2).

### 2.    Voluntary surrender under section 3145(c)

As explained above, section 3145(c) only authorizes appellate judges to order release for exceptional reasons, but following the approach in *DiMattina,* the Court will undertake the 3145(c) analysis.  Section 3145(c) first points back to section 3143.  Specifically, a request for voluntary surrender under section 3145(c) may be granted if the defendant: 1) is "subject to detention pursuant to section 3143(a)(2) or (b)(2)"; 2) "meets the conditions of release set forth in section 3143(a)(1) or (b)(1)"; and 3) "clearly show[s] that there are exceptional reasons why [his] detention would not be appropriate."  Accordingly, for a court to grant Hamm's request for voluntary surrender under section 3145(c), he must satisfy the section's three prongs.

Beginning with the first prong, Hamm agrees that he is subject to detention pursuant to section 3143(a)(2).  Next, as a defendant seeking release pending sentencing, Hamm must satisfy the conditions for release under section 3143(a)(1).  To meet these conditions, Hamm must prove "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1); Fed. R. Crim. P. 46(c).  If the Court finds that Hamm has met the second prong, only then may it consider whether "it is clearly shown that there are exceptional reasons why [his] detention would not be appropriate."  18 U.S.C. § 3145(c).

Accordingly, the Court first addresses whether Hamm has proven by "clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community."  18 U.S.C. § 3143(a)(1); Fed. R. Crim. P. 46(c).  If Hamm presents sufficient evidence, the Court would then address the third prong and assess whether "it is clearly shown that there are exceptional reasons why [his] detention would not be appropriate."  18 U.S.C. § 3145(c).

### a.  Risk of flight and danger to any person or to the community

The Court first addresses the evidentiary standard.  "Clear and convincing evidence means that the thing to be proved is highly probable or reasonably certain. Clear and convincing evidence requires a higher degree of persuasion than the greater weight of the evidence." *Eighth Circuit Manual of Model Jury Instructions – Civil* at 18-3 (2020);  *see also Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citation omitted) (explaining that that the clear-and-convincing-evidence standard imposes the burden on the defendant to "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'" (citation omitted)); *United States v. Jacob*, 767 F.2d 505 (8th Cir. 1985) (in a review of order denying an application for bail pending appeal under 3143(b), describing "clear and convincing" as a "heavy burden"); *United States v. McDonald*, 4:20-cr-00070-SRC, Doc. 69 at pp. 7–9 (E.D. Mo. April 23, 2021).

With this standard in mind, the Court must determine whether Hamm has produced sufficient evidence to meet this high burden.  Hamm needs more than statements or arguments of counsel, for the "[s]tatements, arguments, questions and comments by lawyers representing the parties in the case are not evidence." *Eighth Circuit Manual of Model Jury Instructions – Criminal* at 3.03.1 (2020) ("Statements, arguments, questions and comments by lawyers

representing the parties in the case are not evidence.").  Instead, Hamm must produce testimony, documents, facts stipulated by the parties, or facts that have been judicially noticed.  *Id.*; *see also Jacob*, 767 F.2d at 508–09 (considering the defendant's testimony and documents, including an ID found on his person, in affirming a district court's finding that he did not present clear and convincing evidence that he was not likely to flee or pose a danger to the safety of any other person or the community); *McDonald*, 4:20-cr-00070-SRC, Doc. 69 at 7–9.

Hamm has been on a personal-recognizance bond since August 2019.  Based on the evidence before the Court in the form of Pretrial-Office reports, the Court finds that Hamm does not pose a risk of flight.  *See* Doc. 9.  Hamm's conduct on bond, however, shows that he may be a danger to both one of the victims of his crimes and to the community, given his "violation of maintaining a social media account, and the seemingly blatant disregard for the rules of the location monitoring program," which included going near the victim's residence without authorization.  Doc. 38.

The Court finds that the Pretrial-Office reports show clear and convincing evidence that Hamm does not pose a flight risk.  But Hamm failed to provide clear and convincing evidence that he does not pose a danger to the safety of any other person or the community.  Counsel has ably made argument on this point, but counsel's statements and arguments of course are not evidence, much less clear and convincing evidence.  *Jones*, 608 F.3d 1039; *Eighth Circuit Manual of Model Jury Instructions – Criminal* at 3.03.1 (2020) ("Statements, arguments, questions and comments by lawyers representing the parties in the case are not evidence."); *see also McDonald*, 4:20-cr-00070-SRC, Doc. 69 at pp. 7–9.  And, the evidence in the record is to the contrary.  Hamm committed the child-pornography offenses at age 77 (refuting any notion that he may age out of criminal conduct), and then on release, he violated the conditions of his

20

release by maintaining a social media account, Doc. 37-1, and demonstrated a "blatant disregard of the rules of the local monitoring program" by, among other violations, going near the victim's house.  *See* Docs. 19, 22, 38.  At a minimum, the evidence indicates that Hamm indeed poses a risk to others and the community.

Having failed to come forward with clear and convincing evidence that he does not pose a danger to any other person or the community, Hamm has not met his burden under the second prong of section 3145(c).  The Court therefore need not consider whether Hamm has clearly shown exceptional reasons because he has not met his threshold burden under section 3145(c), assuming it applies to district courts, of demonstrating that he meets the conditions of release set forth in section 3143(a)(1).  18 U.S.C. § 3145(c).  For this reason alone, the Court denies Hamm's motion for voluntary surrender.

**b.      Exceptional reasons under 3145(c)**

Even if the Court reached the "exceptional reasons" prong of section 3145(c), it would conclude that it has not been clearly shown that there are exceptional reasons why Hamm's detention would not be appropriate.  Hamm argues that "[t]he current pandemic is an exceptional reason supporting [his] request for voluntary surrender when combined with his personal health risk factors, his absence of criminal history, his good performance on pretrial release, and the low risk that he presents to other persons or the community."  Doc. 77 at 6.  Hamm further emphasizes that his health issues "make him particularly susceptible to serious complications should he contract COVID-19."  *Id*. at 6.  Hamm and his counsel provided further argument on these proffered reasons at the sentencing hearing.  Hamm's counsel conceded that, if presented alone, neither Hamm's health conditions nor the risk of COVID-19 would constitute an

exceptional reason.  She instead argued that when offered together, these reasons rose to the level of exceptional sufficient to satisfy section 3145(c).

The Eighth Circuit has not specified what evidence is necessary for an exceptional reason to be "clearly shown."  A question also remains on what evidentiary standard applies.  Section 3143(a) requires "clear and convincing evidence," while section 3145(c) requires that "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  The Court need not resolve this question because Hamm has not shown exceptional reasons under Eighth Circuit precedent.

The Eighth Circuit cases dealing with section 3145(c) focus less on the evidence and more on whether the offered reasons themselves rise to the level of "exceptional."  Accordingly, for Hamm's proffered reasons to constitute "exceptional reasons" under section 3145(c), the Court must find that Hamm's "case is clearly out of the ordinary, uncommon, or rare when compared to every other defendant convicted of offenses involving the sexual exploitation of children, all of whom are subject to mandatory detention under [section] 3143(a)(2)."  *Brown*, 368 F.3d at 993 (internal quotation marks omitted).

Governed by this taxing standard, the Eighth Circuit has rarely found that a defendant's circumstances constitute "exceptional reasons" justifying release.  For example, in *Brown*, the court found that a defendant's placement in a mental health treatment program pending his assignment to a federal correctional institution, combined with the likelihood that the defendant was at risk of being a victim of violence if detained before he was assigned to a correctional institution, did not rise to the level of sufficiently exceptional reasons.  368 F.3d at 993; *see also Larue*, 478 F.3d at 925 (that he "complied with the terms of his pretrial release, that he had no criminal record, that he was taking mental-health medication, that he had ongoing employment,

and that the nature of his offense might cause him to be subjected to violence while in jail or

other detention facility" were not exceptional reasons); *Little*, 485 F.3d at 1210–11 ("the fact that

[defendant] cooperated in the investigation, voluntarily gave incriminating statements, consented

to the seizure of his computer, and his full compliance with pretrial release conditions[,] and his

timely appearance at all court proceedings" were not exceptional reasons); and *Schmitt*, 515 F.

App'x. at 647 (for defendant found guilty of conspiracy to manufacture and distribute

methamphetamine, there were no exceptional reasons where defendant did not sell or profit from

drug conspiracy, cooperated with the court, was helping her elderly parents, and was not a risk to

the community).

Moreover, courts in this district and circuit have consistently held that the COVID-19

pandemic is not an exceptional reason by itself.  *See e.g.*, *United States v. Whitfield*, No. 1:19 CR

146 SNLJ, 2020 WL 1976233 (E.D. Mo. Apr. 9, 2020), *report and recommendation adopted*,

No. 1:19 CR 00146 SNLJ, 2020 WL 1975237 (E.D. Mo. Apr. 24, 2020); *United States v.

Thompson*, No. 4:18 CR 821 SNLJ, 2020 WL 2200972 (E.D. Mo. Apr. 17, 2020), *report and

recommendation adopted*, No. 4:18 CR 000821 SNLJ, 2020 WL 2199239 (E.D. Mo. May 5,

2020); *United States v. Morris*, No. 17 CR 00107 (01) DWF-TNL L, 2020 WL 1471683 (D.

Minn. Mar. 26, 2020); *United States v. Neadeau*, 452 F. Supp. 3d 867 (D. Minn. 2020); *United

States v. Goldman*, No. 19-CR-0263 (WMW), 2020 WL 1547380 (D. Minn. Apr. 1, 2020).  Even

so, at the plea hearing, Hamm advised the Court he was scheduled to get his second of two

COVID vaccinations shortly after the hearing; Hamm confirmed at the sentencing hearing that

he received his second dose and has been fully vaccinated for approximately two months.

With this background in mind, the Court finds that the circumstances do not warrant

granting Hamm's request for voluntary surrender under section 3145(c), were it to apply to

23

district courts.  Though commendable, Hamm's more recent compliance with his pretrial release conditions does not justify his release under section 3145(c).  *See Little*, 485 F.3d at 1211.  Secondly, while the Court does not take lightly Hamm's health concerns, his argument that he could potentially contract COVID-19 while he awaits transport to a Bureau of Prisons correctional facility is simply too speculative to constitute an exceptional reason, particularly given that Hamm has been fully vaccinated.

The COVID-19 pandemic has presented "unique and pressing challenges . . . to both society as a whole and the prison population."  *Goldman*, 2020 WL 1547380 at *2.  Moreover, "the Bureau of Prisons has implemented various practices to mitigate transmission of the virus by Federal prisoners."  *Whitfield*, 2020 WL 1976233, at *1–2; *see also* Federal Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan*, https://www.bop.gov/resources/news/20200313_covid-19.jsp; *Oversight of the Federal Bureau of Prisons before the S. Comm. on the Judiciary*, 117th Cong. 5–6 (2021) (statement of Michael D. Carvajal, Director, Federal Bureau of Prisons) ("To date, all Bureau staff have been offered the vaccine and by mid-May, all inmates will have been offered the opportunity to be vaccinated.").  Therefore, the Court concludes that Hamm's health-related arguments regarding the current pandemic do not constitute an exceptional reason warranting his voluntary surrender under section 3145(c), all the more so given that he's fully vaccinated.  And, to further assuage health concerns, the Court has requested expedited transfer of Hamm to a BOP medical facility.

## III.    Conclusion

For all of these reasons, the Court denies [64] Hamm's motion for voluntary surrender.

So Ordered this 27th day of April.

_SL R. C_

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**